PEOPLE'S PARTY OF CONNECTICUT v. ALMA A. DAWSON ET AL.,
REGISTRARS OF VOTERS OF THE TOWN OF NEWINGTON

SUPERIOR COURT      FAIRFIELD COUNTY      FILE No. 78161

Motion filed October 1, 1948.

*Gruber & Turkel,* of Stamford, for the Plaintiff.

*Cyril Coleman,* of Hartford, for the Defendants.

QUINLAN, J. This proceeding seeks for its basic relief a declaratory judgment. The action itself was returnable to court the first Tuesday in September. The prayer for an injunction is in aid of the declaratory judgment. The immediate motion is for a temporary injunction. An injunction does not lie as a matter of right but in the sound discretion of the trier; *Phoenix Insurance Co.* v. *Carey,* 80 Conn. 426; *Point O' Woods Assn., Inc.* v. *Busher,* 117 Conn. 247, 250; is not granted to prevent an act possibly injurious in the future; *Enfield Toll Bridge Co.* v. *Connecticut River Co.,* 7 Conn. 28, 50; and is never granted because of mere apprehensions. *Goodwin* v. *New York, N. H. & H. R. Co.,* 43 Conn. 494, 500.

This preliminary reference to the legal principles which are controlling will permit an understanding approach to the conclusions reached and a review of the facts. The plaintiff is an

organized entity with its principal office at Bridgeport. The defendants are registrars of the town of Newington. There seems to have been an apprehension that the secretary of state and these registrars had collaborated on a course of action in reference to electors who signed petitions so that the plaintiff might have a place on the state ticket and for other offices in the state. The two registrars testified and I believe them when they say that not only had they not discussed the matter with the secretary of state prior to issuing a certain statement, exhibit F, but that they were surprised when inquired of by the public press. They had prior to the time of hearing taken no action in relation to the erasure of electors' names from party caucus lists except the issuance of a statement, which appears to have been more or less a response to press inquiries. In fact, the names procured on the presidential petitions far exceeded the number required by statute and so far as that petition is concerned no damage can conceivably accrue to the plaintiff pending trial on the merits of this case and, indeed, the election.

So far as other candidates for national, state and local offices are concerned, the claim of the plaintiff is based on apprehension, not on any evidence before me. As a practical matter, the machinery of the registrars in the various towns would be under considerable pressure to accomplish any real damage before the hearing on the merits.

If, as the evidence seemed to reveal, the plaintiff was under some misapprehension as to all the facts, at the same time the registrars may be under some misapprehension of the law, as appears to be indicated by the following language in the statement which they issued, to wit: "Consequently we believe it is our duty under the law to hold a hearing" in order to determine whether these people realized that in signing the petition they were becoming actively affiliated with another political organization.

At once it must be said that there is a presumption that a public officer will exercise his powers impartially and according to law. *Lieberman* v. *Van DeCarr*, 199 U. S. 552.

Section 166c of the 1935 Cumulative Supplement to the General Statutes provides for the methods by which a new party may appear on the ballot. The plaintiff has proceeded in accordance therewith. Presumably the signatures are those of electors. Our Supreme Court has said: "It is not required that

a new party applying for official recognition on the official ballot should issue forth from a cave of Adullam, and be composed of malcontents of every political stripe." *Miner* v. *Marsh,* 102 Conn. 600, 607. There must also be independence in political action, as pointed out in *Fields* v. *Osborne,* 60 Conn. 544, 547.

Our legislature, however, has established laws governing primaries, caucuses and conventions. General Statutes, Chapter 40. Section 700 provides for "Erasure from party lists." The chapter has to do with the enrollment of electors and caucus lists. Enrollment is a positive act, as is generally well known. Many electors decline to express any party preference by enrollment. Her, certainly, there was no enrollment in a party, so we must look to § 700 for the tests warranting erasure. These are that when the registrar of a political party shall be of the opinion that any person on the enrollment list of the particular political party represented by the registrar "is not affiliated with, or in good faith a member of, that political party, and does not intend to support its principles or candidates" he shall cite such person to appear. And § 701 makes "Enrollment in any other political party or organization, active affiliation with any other political party or organization, knowingly being a candidate at any primary or caucus of any other party or political organization, or being a candidate for office upon the ticket of another party or organization within a period of two years prior to the date of the notice" provided for "prima facie evidence that any such elector is not affiliated with the party upon the enrollment list of which his name appears, and that such elector does not intend to longer affiliate with such party or organization." It will be observed that the statutes do not require the registrars to determine what people signing a petition may "realize," as the registrars of Newington, defendants here, suggest in their statement. The registrars shall be of an opinion, as provided in the statutes, that a certain state of facts exists, and then only proceed in accordance with the statute. Section 701 contains no provision that merely signing a petition is of itself a warrant for the opinion provided in the statute. In passing upon a question of this kind, the excitement of a national election should not be allowed to obscure the possibilities which may arise in any community, at any time. See *Fields* v. *Osborne,* supra, 547.

The cases of *Miner* v. *Marsh,* supra, *Post* v. *Dillane,* 119 Conn. 655, and *In the Matter of Gilhuly's Petition,* 124 Conn. 271, as well as the opinions of the attorney general, 17 Atty.

Gen. Op. Conn. 372 and that set forth in the October 14, 1946, issue of the Connecticut Law Journal, afford little assistance because the facts under consideration on those occasions were either precisely in violation of the statutes or under a special set of circumstances. The opinion of the attorney general last referred to reinforces the view that the mere signing of a petition does not come within the purview of the statutes under consideration.

Because of the lack, on the evidence, of immediate emergency, because the relief sought seems but ancillary to the basic relief of declaratory judgment and because of the misconceptions of fact on the one side, and law on the other, as well as in the exercise of the court's discretion, I deny the temporary injunction, trusting that enough has been said to cause the registrars to proceed with extreme caution and, with the foregoing as a guide, and perhaps to the satisfaction of all the parties, not even require a hearing on the merits.