BAM HISTORIC DISTRICT ASSOCIATION, et al., Plaintiffs-Appellants,

v.

Edward I. KOCH, Mayor of the City of New York, et al., Defendants-Appellees.

No. 75, Docket 83-7219.

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1983.
Decided Dec. 2, 1983.

Richard H. Dolan, New York City (Schlam, Stone, Caro & Dolan, New York City, on brief), for plaintiffs-appellants.

Doron Gopstein, New York City (Frederick A.O. Schwarz, Jr., New York City Corp. Counsel, Leonard Koerner, George Gutwirth, New York City, on brief), for defendants-appellees.

Before FEINBERG, Chief Judge, and LUMBARD and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This is an appeal from an order of the District Court for the Eastern District of New York (Mark A. Costantino, Judge) denying a preliminary injunction that had been sought to prevent officials of New York City from operating a shelter for homeless men. The appeal also challenges the District Court's dismissal, for lack of subject matter jurisdiction, of the complaint's first cause of action alleging a denial of rights protected by the Due Process Clause of the Fourteenth Amendment. For the reasons that follow, we affirm the denial of the injunction; we also affirm the dismissal of the first cause of action, but do so for failure to state a claim on which relief can be granted, rather than for lack of subject matter jurisdiction.

## I.

The suit was filed by the Brooklyn Academy of Music (BAM) Historic District Association and some of its members against the Mayor and Commissioner of Social Services of New York City. The District is a three-block area located in the Fort Greene Community of Brooklyn. The population of the census tract encompassing the Historic District is approximately 77 percent non-White. Residents of the Fort Greene Community and especially members of the BAM Historic District Association have worked hard to combat the deterioration of their neighborhood and to maintain and improve the quality of life there. Their immediate concern in this litigation is a thirteen-story building located at 55 Hanson Place, one of the boundaries of the Historic District. The building, which at one time housed the Brooklyn YMCA, is currently owned by New York State. Since 1977 the building had been vacant until the events precipitating this lawsuit. In January 1983 the City announced that among new sites that it would begin using as shelters for homeless men was 55 Hanson Place. The City

obtained the right to use a portion of the premises under an oral agreement with the State. No rent is being paid. Initially the City housed up to sixty men in basement quarters of the building. The City intends to renovate the first floor of the building and use that floor, rather than the basement, as a shelter with a capacity for 150 men.

The complaint alleged two causes of action to challenge the City's operation of the shelter. In their first cause of action, plaintiffs alleged that the decision to operate the shelter had been announced without any prior notice or opportunity to hear the views of community residents. The precipitous nature of the opening of the shelter was alleged to constitute a deprivation of property and liberty without due process of law. In their second cause of action, plaintiffs alleged that City officials had deliberately concentrated the placement of shelters for the homeless in communities with a disproportionately large population of Blacks, Hispanics, and other minorities. These placement decisions were alleged to deny plaintiffs equal protection of the laws. With respect to both causes of action, plaintiffs sought a preliminary injunction.

The District Court denied the injunction with respect to the first cause of action on the basis of the complaint, oral argument, and affidavits. Accepting the plaintiffs' invitation to have their due process claim understood to be an allegation that the City had failed to comply with the Uniform Land Use Review Procedure (ULURP) set forth in section 197-c of the New York City Charter,[1] Judge Costantino ruled that the provisions of ULURP did not apply to the City's operation of the shelter at 55 Hanson Place. On the basis of this ruling, Judge Costantino dismissed the first cause of action for lack of subject matter jurisdiction. The dismissal necessarily denied the requested preliminary injunction with respect

---

1. ULURP specifies detailed steps for public notice and hearings prior to a wide variety of proposed actions concerning the use, development, or improvement of real property and provides for a series of review of such proposed actions by the community board for the community district in which the property is located, the New York City Planning Commission, and the New York City Board of Estimate.

to the first cause of action.[2] The District Judge then scheduled an evidentiary hearing with respect to the second cause of action, alleging a denial of equal protection. After the hearing Judge Costantino denied the preliminary injunction, ruling that plaintiffs had failed to show irreparable injury. The second cause of action remains to be tried on its merits.

## II.

■ The District Judge did not abuse his discretion in concluding that the plaintiffs' showing of irreparable injury was too insubstantial to warrant a preliminary injunction. Though we do not doubt the sincerity of the plaintiffs in their expression of concern about the quality of life in their neighborhood, their evidence of irreparable injury stemming from the operation of the shelter at 55 Hanson Place during the pendency of this litigation was entirely speculative. No evidence was presented concerning the shelter program. The only evidence that related to clientele of the shelter concerned one occasion when a resident of the shelter asked one of the plaintiffs for money to buy wine. Irreparable injury, required under both the "probability of success" and the "serious question going to the merits" tests for a preliminary injunction, *Buffalo Forge Co. v. Ampco-Pittsburgh Corp.*, 638 F.2d 568, 569 (2d Cir.1981), was not shown. Moreover the public interest, which must always be weighed in considering preliminary injunctive relief, would have been seriously impaired if the City had been forced to abandon a sorely needed facility to house the homeless. *Cf. Blackshear Residents Organization v. Romney*, 472 F.2d 1197, 1198

(5th Cir.1973) (site selection for low-income housing).

■ Upon an appeal from a denial of a preliminary injunction, the scope of our review extends to a ruling dismissing for lack of jurisdiction the cause of action on which the injunction was sought. *Cutting Room Appliances Corp. v. Empire Cutting Machine Co., Inc.*, 186 F.2d 997 (2d Cir.1951). We therefore review the District Court's ruling that subject matter jurisdiction was lacking over the first cause of action. That review requires further elaboration of the plaintiffs' due process contentions.

Plaintiffs purport to make two claims under the Due Process Clause, the first dependent on the municipal procedure known as ULURP and the second independent of ULURP. Explaining their first due process claim, plaintiffs contend that they have been deprived of "their liberty interest under the New York City Charter to participate in the decision-making process affecting their community." Brief for Appellants at 26. The second due process claim is that defendants acted "to deprive plaintiffs of their property and liberty interest without affording them any opportunity for a hearing." *Id.*

■ The first due process claim fails because the plaintiffs do not have a liberty interest in the procedures established by the New York City Charter. "Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural requirements." *Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir.1979) (citations omitted), and cases there cited. As the

2. Since the District Court denied the preliminary injunction with respect to the entire complaint, we have no occasion on this appeal to consider whether a ruling with respect to a preliminary injunction that considers only portions of a claim or a counterclaim can be considered a denial of a preliminary injunction sufficient to invoke appellate jurisdiction under 28 U.S.C. § 1292(a)(1) (1976). *Compare Western Geophysical Co. of America, Inc. v. Bolt Associates, Inc.*, 440 F.2d 765, 769–71 (2d Cir. 1971) (appellate jurisdiction lacking where in-

junction denied with respect to four of six claims in a counterclaim), *with Glenmore v. Ahern*, 276 F.2d 525 (2d Cir.1960), *cert. denied sub nom. Tri-Continental Financial Corp. v. Glenmore*, 362 U.S. 964, 80 S.Ct. 877, 4 L.Ed.2d 878 (1960) (appellate jurisdiction upheld where injunction denied on a legal claim and theory deemed separate from other portions of a complaint); *see also Western Geophysical, supra*, 440 F.2d at 770 n. 4, questioning continued validity of *Glenmore*.

Supreme Court recently noted, "[A]n expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Olim v. Wakinekona,* —— U.S. ——, 103 S.Ct. 1741, 1747 n. 12, 75 L.Ed.2d 813 (1983). The City Charter provisions known as ULURP concern solely procedural requirements. Therefore, whether or not these local procedures apply to the City's use of 55 Hanson Place, an issue we do not adjudicate, those procedures create no liberty interest protected by the Fourteenth Amendment. On the first aspect of plaintiffs' due process claim, the District Court, instead of adjudicating whether ULURP was applicable, should have simply ruled that there had been a failure to state a federal claim on which relief could be granted. Whether plaintiffs have rights under ULURP enforceable in state court is a matter not resolved by this litigation. There is no occasion to exercise pendent jurisdiction over the local law claim since the federal due process claims fail at the threshold and the local law claim, though concerning the same premises at issue in the equal protection claim that remains for trial, does not arise from a common nucleus of operative facts on which the equal protection claim is based. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, the complaint did not assert pendent jurisdiction, but relied solely on 28 U.S.C. §§ 1331 and 1343 (Supp. V 1981).

The second due process claim fails because there has been no deprivation of plaintiffs' property interest and plaintiffs have no cognizable liberty interest in preventing the location of a shelter for the homeless in their neighborhood. Plaintiffs are not claiming that their property has been taken or their use of it so drastically regulated as to destroy its value, *see Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). Their complaint is that the City's operation of the shelter in the vicinity of their property will cause a decline in property values. Governmental action of that sort has never been held to "deprive" a person of property within the meaning of the Fourteenth Amendment. Nor is there any basis for asserting a "liberty" interest in not having the City operate the shelter in plaintiffs' neighborhood. The "liberty" protected by the Fourteenth Amendment extends beyond freedom from bodily restraint and includes the opportunity to make a range of personal decisions concerning one's life, family, and private pursuits, *see Roe v. Wade,* 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 (1973); *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). However, it does not include the maintenance of transient levels of the quality of neighborhood life. The Fourteenth Amendment does not impose upon states and localities either an Administrative Procedure Act to regulate every governmental action nor an Environmental Policy Act to regulate those governmental actions that may affect the quality of neighborhood life. Whether notice and hearing procedures should be instituted to broaden public participation in governmental decisions of the sort challenged in this case remains a matter for consideration by state and local legislative bodies. And the scope of their responses, such as the ULURP review mandated by the New York City Charter, is appropriately to be determined by local courts.

Plaintiffs' first cause of action, though unavailing, was not so insubstantial as to fail to provide an occasion for the District Court's exercise of subject matter jurisdiction; it simply failed to state a claim on which relief could be granted, *see Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945), and on that basis we affirm its dismissal. The order denying the preliminary injunction is affirmed.