**Jodi PERRY, Individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**Michael DOWLING, individually and in his official capacity as Commissioner of the New York State Department of Social Services; and Joan Sinclair, as Commissioner of the Allegany County Department of Social Services, Defendants.**

No. 93–CV–541C.

United States District Court, W.D. New York.

May 6, 1997.

**232**

Southern Tier Legal Services (Mark H. Wattenberg, and David B. Pels, of counsel), Bath, NY, for Plaintiffs.

Dennis C. Vacco, Attorney General of State of New York (Joseph P. Reina, Assistant Attorney General, of counsel), Buffalo, NY, for Defendants.

## DECISION AND ORDER

CURTIN, District Judge.

The facts of this case are set out in detail both in this court's previous orders and in the decision of the Court of Appeals. We repeat only those facts necessary to the disposition of the instant motions.

This court granted plaintiffs motion for summary judgment, concluding that the New York State Department of Social Services ("DSS") policy at issue was unreasonable. *Perry v. Dowling*, 888 F.Supp. 485 (W.D.N.Y. 1995). The policy requires women who receive prenatal and post-partum medical assistance under the Social Security Act, 42 U.S.C. § 1396a(a)(10)(A)(i)(I)(IV)(1994), to cooperate in efforts to retroactively recoup the costs of the medical assistance received from the unwed fathers of the children upon the recertification for continued Medicaid coverage. This court held that policy was an unreasonable interpretation of the exemption from paternity cooperation extended to poverty level women under section 1912(a)(1)(B) of the Social Security Act, 42 U.S.C. § 1396k(a)(1)(B). As part of that decision, the court enjoined the State from enforcement of its recoupment efforts.

Defendants appealed, and the Second Circuit Court of Appeals reversed, holding that the DSS policy is a permissible interpretation of the Social Security Act. The Court of Appeals stated:

> The plaintiff argues that because English, the unwed father, lived with her at the time of her recertification and was contributing to the household income, requiring him to repay the cost of the prenatal services provided would diminish the household income, thereby creating a disincentive from applying for prenatal medical assistance in contravention of Congress's intent. We find the argument spurious.
>
> Congress clearly did not intend to encourage parents to live out of wedlock in the same home with their children in such a manner that they could receive *carte blanche* public assistance. Indeed, the plaintiff's construction undermines another fundamental purpose underlying section 1396k: Congress's intent that unwed fathers be held accountable for the costs of services provided to the mother during pregnancy and thereafter. Unlike the construction urged by the plaintiff, the agency's interpretation gives effect to this purpose without directly conflicting with the underlying purpose of the cooperation exemption. Under DSS's interpretation, poverty level pregnant women remain entitled to prenatal care with no strings attached. It is only upon recertification for continued Medicaid coverage that the recoupment procedures against the unwed father are triggered. Thus, while DSS's policy may discourage recertification (an effect that the paternity cooperation requirements undoubtedly have anyway, as recognized by the passing of the pregnancy exemption), the policy is unlikely to discourage prenatal care. Where, as here,

an agency's interpretation reasonably accommodates and reconciles competing interests, its interpretation is entitled to deference.

Accordingly, in light of: (1) the language of the statute limiting the exemption to cooperation during the time period of pregnancy and 60–days after the last day of pregnancy, (2) the fact that recoupment does not undermine Congress's intent of encouraging early prenatal care, and (3) the fact that DSS's interpretation gives meaning to the entire statutory scheme, we conclude that DSS's interpretation is a reasonable and permissible construction warranting substantial deference. Consequently, we reverse and remand for consideration of the plaintiff's due process claims.

*Perry v. Dowling,* 95 F.3d 231, 238 (2d Cir. 1996).

Plaintiff now argues that even if the DSS policy is a reasonable statutory interpretation, defendants have violated her due process rights by failing to fully inform her of her rights not to cooperate. Specifically, plaintiffs argue that defendants must inform applicants that:

(1) Applicants for Medicaid, including prior recipients of "Poverty Level Pregnant Women" Medicaid coverage, are not required to cooperate with defendants to obtain support or repayment of previously paid "Poverty Level Pregnant Women" expenses from the unwed father if they apply for continued or first-time Medicaid coverage for their children, but not for themselves (*See* 42 C.F.R. § 433.148(b));

(2) recipients of "Poverty Level Pregnant Women" Medicaid coverage will be required to cooperate with defendants to obtain repayment of their prenatal and birth-related medical expenses only if they later apply for continued Medicaid coverage for themselves. (*See Perry v. Dowling,* 95 F.3d at 238); and

(3) applicants for, and recipients of, "Poverty Level Pregnant Women" Medicaid coverage have an absolute right to refuse to cooperate with defendants to obtain support from the unwed father. (*See Perry v. Dowling,* 95 F.3d at 238). Item 75, p. 7.

## I. Plaintiff's Due Process Claim

It is generally recognized that Medicaid, Medicare, and other federal cash assistance recipients have standing to raise due process claims alleging an agency's failure to issue adequate notice of their rights and obligations. *See Schwartz v. Dolan,* 854 F.Supp. 932 (N.D.N.Y.1994), *vacated on other grounds,* 86 F.3d 315 (2d Cir.1996).

Three factors are considered by courts to determine the amount of procedural due process that is warranted in a given case: (1) the private interest affected by the government action; (2) the risk of erroneous deprivation of that interest through the procedures used, and the probable value, if any, of additional or substitute safeguards; and (3) the government interest, including the administrative and fiscal burdens which would result from the additional or substitute procedural safeguards. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Plaintiff argues first that she has a significant "derivative economic interest" in the collection attempts made against her household for prenatal expenses. Item 75, p. 17. The Court of Appeals clearly rejected this argument, calling it "spurious," and noting that Congress "clearly did not intend to encourage parents to live out of wedlock in the same home with their children in such a manner that they could receive *carte blanche* public assistance." *Perry,* 95 F.3d at 238.

Plaintiff next argues that she has a privacy interest. To satisfy the statutory cooperation requirements, a woman must assist the state in establishing the paternity of her child when she is not married to the child's father. According to the plaintiff, "[t]here can be no greater invasion of privacy than the requirement that the state force an individual to legally declare the father of her child." Item 75 p. 16.

Plaintiff offers no case law in support of such a privacy right, and the court refers to cases which require the opposite conclusion. In a series of cases concerning Aid to Fami-

lies with Dependent Children, at least one federal court has held that there is no constitutional violation where agencies make reasonably narrow inquiries into personal information that is germane to the financial and administrative integrity of the state's benefits programs. *Doe v. Norton,* 365 F.Supp. 65 (D.Conn.1973), *vacated on other grounds sub nom. Roe v. Norton,* 422 U.S. 391, 95 S.Ct. 2221, 45 L.Ed.2d 268 (1975) (per curiam), *on remand sub nom. Doe v. Maher,* 414 F.Supp. 1368 (D.Conn.1976), *vacated on other grounds,* 432 U.S. 526, 97 S.Ct. 2474, 53 L.Ed.2d 534 (1977). In *Doe v. Norton,* the court held that, despite its proximity to the intimate realm of procreation and family, an inquiry about the father's identity was permissible and its scope was properly limited to the state's legitimate interests. The court explained:

> There is no intrusion into the home nor any participation in interpersonal decisions among its occupants.... The statute does not forbid an unwed mother to have a man in the house or even in her bedroom.... The only restriction it imposes ... is that the father satisfy his legal obligation to support his own child and that the mother provide what information she possesses useful toward that end.

*Norton,* 365 F.Supp. at 77–78. The district court's rulings on the constitutional issues have never been overruled; and even though vacated, the reasoning of its opinions remains sound. The court finds no basis to distinguish the *Norton* court's holding from the facts at bar.

Finally, plaintiff cites *BAM Historic District Ass'n. v. Koch,* 723 F.2d 233 (2d Cir. 1983), for the proposition that she has a protected liberty interest which "includes the opportunity to make a range of personal decisions concerning one's life, family, and private pursuits." *Id.* at 237. Plaintiff states that she has a protected liberty interest in being able to make a meaningful decision concerning the costs and benefits of a Medicaid application following receipt of poverty level pregnant woman Medicaid benefits.

The *Koch* decision offers no support for plaintiffs argument. In fact, the Court of Appeals found precisely the reverse. The court held that while the Fourteenth Amendment extends beyond freedom from physical restraint, it does not "impose upon states and localities an Administrative Procedure Act to regulate government action...." *Id.* "Whether notice and hearing procedures should be instituted to broaden public participation in governmental decisions of the sort challenged in this case remains a matter for consideration by state and local legislative bodies." *Id.* Although the *Koch* case is not entirely analogous to the case at bar, it in no way stands for the proposition that the Medicaid regulation at issue creates a protected liberty interest for the plaintiff.

The court concludes, therefore, that plaintiffs "private interests" in amended notification procedures are marginal at best. The Court of Appeals determined that the recoupment policy is a reasonable statutory interpretation, and that plaintiff has no cognizable derivative interest in the child's father's income. This court has determined that plaintiff has no significant private interest affected by government action, and hence no cognizable right to due process. Clearly, the risk of erroneous deprivation of these marginal interests is also insignificant. Consequently, this court finds no basis on which to order any amendment of the notice provisions.

## CONCLUSION

For the foregoing reasons, plaintiffs supplemental motion for summary judgment is denied, and defendant's cross-motion for summary judgment is granted. Defendant's motion to vacate the injunction is also granted.

So ordered.