24-2877
*Italian-American Defense League v. City of New Haven*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of September, two thousand twenty-five.

PRESENT:   DEBRA ANN LIVINGSTON,
                       *Chief Judge,*
              JOSÉ A. CABRANES,
              STEVEN J. MENASHI,
                       *Circuit Judges.*

———————————————————————————

ITALIAN-AMERICAN    DEFENSE    LEAGUE,
RALPH MARCARELLI,

         *Plaintiffs-Appellants,*

     v.                                                    No. 24-2877

CITY OF NEW HAVEN, JUSTIN ELICKER,

         *Defendants-Appellees.*[*]

———————————————————————————

———————————

[*]  The Clerk of Court is directed to amend the caption as set forth above.

*For Plaintiffs-Appellants*:

NORMAN A. PATTIS, Pattis & Paz, LLC, New Haven, CT.

*For Defendants-Appellees*:

EARLE GIOVANNIELLO, Office of the Corporation Counsel for the City of New Haven, New Haven, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Williams, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants the Italian-American Defense League ("IADL") and Ralph Marcarelli sued the City of New Haven and its mayor, Justin Elicker, under 42 U.S.C. § 1983, alleging that the City's removal of a statue of Christopher Columbus from the historic Wooster Square Park violated the plaintiffs' constitutional right to due process. The complaint alleged that the removal of the statue adversely impacted the character of the neighborhood and decreased the value of neighboring homes. The plaintiffs sought damages and an injunction ordering the statue returned. The defendants moved to dismiss the complaint for lack of standing and for failure to state a claim. The district court granted the motion, concluding that the plaintiffs lacked standing and, in the alternative, failed to state a due process claim. *See Italian Am. Def. League v. City of New Haven*, No. 23-CV-773, 2024 WL 4372505 (D. Conn. Oct. 2, 2024). The plaintiffs timely appealed. We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal.

**I**

"We review *de novo* a district court's grant of a motion to dismiss for lack of standing." *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 191 (2d Cir. 2014). "As with any motion to dismiss, we accept all well-

pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.* (internal quotation marks and alterations omitted). We also review *de novo* the grant of a motion to dismiss for failure to state a claim. *See Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II

The district court held that the plaintiffs lacked standing because they did not suffer any concrete and particularized harm from the removal of the statue. We disagree.

## A

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks omitted). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* An associational plaintiff has standing to sue on behalf of its members if it can demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

We conclude that IADL pleaded facts sufficient to support its associational standing. The complaint plausibly alleged that IADL has members who have suffered aesthetic harms from the removal of the statue. A plaintiff may satisfy the

3

injury-in-fact requirement by alleging a concrete and particularized aesthetic or environmental harm. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (explaining that an environmental harm that "in fact affects the recreational or even the mere esthetic interests of the plaintiff … will suffice" to establish standing). IADL represented that several of its members live near Wooster Square Park, the former site of the Christopher Columbus statue. *See* App'x 1, 2 (¶¶ 1, 3); *see also* Oral Argument Audio Recording at 48:33. The complaint described the neighborhood around Wooster Square Park as "home to many Italian-Americans who have chosen to live there so as to share their lives with others of similar[] heritage." App'x 3-4 (¶ 11). These residents "place a unique value on living in the vicinity because it is known to many as 'Little Italy'" and hosts "annual festivals and events celebrating Italian-American heritage." *Id.*[1] These allegations gave rise to the reasonable inference that many of the residents derived aesthetic and recreational benefits from regularly viewing a statue that "was intended to signal the contributions Italian-Americans had made to American culture and society." App'x 4 (¶ 12).

Such a resident of Wooster Square has at least as concrete an interest in the presence of the statue as an environmental plaintiff has in the aesthetic character of a wilderness area he uses or visits, and the Supreme Court has said that the invasion of such an interest constitutes an Article III injury. "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area

---

[1] Marcarelli alleged that he is one of those residents and that "his decision to own a home in the area was made in reliance upon the City's decision lawfully to maintain the Wooster Historic District," including "its buildings, structures and features." App'x 6 (¶ 21). At the time the lawsuit was filed, Marcarelli lived on Wooster Place, which abuts Wooster Square Park. *Id.* at 1-2 (¶¶ 1, 4). The defendants claim that Marcarelli has since sold his Wooster Place property and moved to Florida. *See* Appellee Br. 17 nn.2 & 3. This fact does not affect IADL's standing, however, because IADL has other members similarly situated to Marcarelli. *See* Oral Argument Audio Recording at 48:33.

will be lessened by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (internal quotation marks omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562-63 (1992) ("[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."). The plaintiffs have therefore plausibly alleged an aesthetic injury based on the removal of the statue.

**B**

The complaint likewise satisfied the requirements of causation and redressability. *See TransUnion*, 594 U.S. at 423. The allegations supported a reasonable inference that removal of the statue—a symbol of Italian heritage—adversely affected the nature of the neighborhood, which residents value for its Italian-American character. The plaintiffs sought an injunction requiring the statue to be returned, which would plausibly remedy the aesthetic harm the plaintiffs have pleaded.[2] Those allegations of causation and redressability were sufficient to survive a motion to dismiss. *See Bennett v. Spear*, 520 U.S. 154, 171 (1997) (describing a plaintiff's burden of alleging causation and redressability at the motion-to-dismiss stage as "relatively modest"). The complaint sufficiently alleged that IADL has members with standing.

The remaining requirements for associational standing were also met. One of the stated goals of IADL is "preserving Italian-American heritage and fostering public appreciation of the role of Italians in American life." App'x 2 (¶ 3). Restoring the Christopher Columbus statue to New Haven's "Little Italy," *id.* at 3-4 (¶ 11), is germane to this purpose. *See Hunt*, 432 U.S. at 343. And the relief requested—prospective injunctive relief—does not require the participation of individual members of the organization. *Id.*

---

[2] The complaint also sought declaratory relief, punitive damages, and the creation of a constructive trust with the statue as the trust corpus. App'x 1, 6-7 (¶¶ 1, 26-27). Those remedies would also redress and prevent recurrence of the injury.

We conclude that IADL established associational standing to bring this suit on behalf of its members.

**III**

The district court was correct, however, in concluding that the plaintiffs failed to state a § 1983 claim for a violation of the Due Process Clause. *See Italian Am. Def. League*, 2024 WL 4372505, at *5.

The plaintiffs alleged that the City violated their right to due process by removing the statue "secretly, without a public hearing, public notice" or offering the plaintiffs "a meaningful opportunity to be heard, or even a right to be heard at all." App'x 6 (¶ 23). To state a due process claim under § 1983, a plaintiff must plausibly allege that "(1) state action (2) deprived him or her of liberty or property (3) without due process of law." *Bellin v. Zucker*, 6 F.4th 463, 474 (2d Cir. 2021) (quoting *Barrows v. Burwell*, 777 F.3d 106, 113 (2d Cir. 2015)). "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

The plaintiffs have not identified any protected property or liberty interest in the statue. The plaintiffs alleged a "property interest in the historical preservation of Wooster Square Park, its buildings, structures and features." App'x 6 (¶ 21). But as the district court explained, the plaintiffs conceded that "New Haven's Charter gives the City the power to manage, regulate and control all City property" and that "[t]he Columbus statue is property of the City of New Haven." *Italian Am. Def. League*, 2024 WL 4372505, at *5 (quoting App'x 5 (¶ 18)). The plaintiffs do not have a property interest in a statue that belongs to the City. Nor do the plaintiffs have a "liberty" interest in the statue remaining in the neighborhood. This court has previously held that "[t]he 'liberty' protected by the Fourteenth Amendment … does not include the maintenance of transient levels of the quality of neighborhood life." *BAM Historic Dist. Ass'n v. Koch*, 723 F.2d 233, 237 (2d Cir. 1983).

6

Because the plaintiffs have not plausibly alleged that the removal of the statue deprived them of a property or liberty interest, they have failed to state a claim on which relief may be granted.

\*     \*     \*

We have considered the plaintiffs' remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court